CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

NOV 07 2008

JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CYNTHIA R. JONES, | ) | CASE NO. 4:07CV00054 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | By: B. Waugh Crigler |
| of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's claims[1] for a period of disability, disability insurance benefits, and supplemental security income[2] ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

---

[1] Plaintiff filed an application for a period of disability and disability insurance benefits on April 9, 2003, alleging a disability onset date of July 15, 2001. (R. 143-145.) The record contains another application for a period of disability and disability insurance benefits filed on May 27, 2004, in which plaintiff alleged a disability onset date of March 26, 2004. (R. 147-149.)

[2] On May 27, 2004, plaintiff filed an application for SSI with an alleged disability onset date of March 26, 2004. (R. 345-348.)

In a decision issued on May 25, 2006, an Administrative Law Judge ("Law Judge") found that plaintiff's residual functional capacity ("RFC") did not preclude her from performing her past relevant work, and as such, she was not disabled under the Act. (R. 31-36.) Plaintiff appealed this decision to the Appeals Council. (R. 74.) On August 9, 2006, the Appeals Council found that neither the record nor the reasons advanced on appeal provided a basis for changing the Law Judge's decision. (R. 77-79.) Plaintiff's request for review was denied, and the May 25, 2006 decision was adopted as the final decision of the Commissioner. (R. 77.)

It was later determined that portions of the tape recording of plaintiff's December 8, 2005 hearing before the Law Judge were inaudible and that a complete transcript from the hearing could not be prepared. (R. 81, 116, 125.) Upon motion of the Commissioner, and the court finding that good cause had been shown, the case was remanded to the Commissioner on December 14, 2006. (R. 126.) The Appeals Council vacated the Commissioner's final decision and remanded the case for a *de novo* hearing. (R. 125.)

In his July 27, 2007 decision, the Law Judge determined that plaintiff's alleged date of disability onset is March 26, 2004, and that she is insured for benefits through December 31, 2010. (R. 12, 14-15.) The Law Judge found that plaintiff had engaged in substantial gainful activity during the relevant time period, but that her low earnings did not rise to the level of substantial gainful activity "SGA".[3] (R. 15.) The Law Judge further found that plaintiff suffered asthma, hypertension, diabetes mellitus, hyperlipidemia, hypothyroidism, and obesity[4], but that

---

[3]The Law Judge noted that, although her work did not rise to the level of being SGA, it provided evidence of her abilities in a work environment. (R. 15.)

[4]At her hearing, plaintiff testified that she was 5'5" and 232 pounds. (R. 361.)

2

the conditions were non-severe impairments because they were controllable and do not impose significant work-related limitations. See 20 C.F.R. §§ 404.1521(a), 416.921(a) (A "non-severe" impairment is an impairment or combination of impairments which does not "significantly limit [a claimant's] physical or mental ability to do basic work activities."). (R. 18.) It was determined that plaintiff suffered a borderline intellectual functioning which was a severe impairment[5], though alone or in combination, did not constitute an impairment which met or equal any listed impairment. (R. 15, 18.) The Law Judge found that, although plaintiff's medically determinable impairments reasonably could be expected to produce some of her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely credible." (R. 22.) He then found that plaintiff, a younger individual[6], retained the RFC to perform simple, routine work at all exertional levels, and that she was not precluded from performing her past relevant work as an inspector, a packer, a companion, a housekeeper, and a box maker. (R. 20, 24.) Thus, the Law Judge ultimately found that plaintiff was not disabled under the Act at that level of the sequential evaluation. (R. 24.)

Plaintiff appealed the Law Judge's July 27, 2007 decision to the Appeals Council. (R. 9.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the

---

[5]Although the consultative psychologist found that plaintiff was suffering a major depressive disorder on February 8, 2007, the Law Judge noted that she had no history of mental health treatment, depression was not noted in her medical records from her treating physicians or medical personnel at the Emergency Room, and her depression was not documented as having lasted twelve months and was not expected to last twelve months. (R. 18, 321.) Thus, the Law Judge concluded that plaintiff's depression was not a severe impairment. (R. 18.)

[6]Plaintiff was born on January 2, 1960. (R. 400.) Under the Regulations, an individual less than fifty years old is a "younger person." 20 C.F.R. §§ 404.1563(c), 416.963(c).

3

Commissioner. (R. 7-8.) This action ensued.

In the brief filed in support of plaintiff's motion for summary judgment, she initially argues that the Law Judge erred in failing to find she was disabled under 12.05C because she has the requisite IQ score and suffers other physical impairments which cause her to experience additional and significant work-related limitations. *See* 20 C.F.R. §§ 404.1525, 416.925, App. 1, § 12.05(C). (Pl's Brief, pp. 20-23.) Also, plaintiff contends that her full scale IQ of 67 is uncontroverted and supported by the other evidence of record, including the fact that she is a middle-aged adult who has never been able to live alone. (Pl's Brief, pp. 21-22.) Plaintiff contends that the evidence further establishes that her diabetes mellitus, asthma, hypertension, and hypothyroidism create significant and additional work-related limitations, and that the Law Judge's contention that her symptoms are controlled with medication and are the result of medical non-compliance is irrational and inconsistent with the record. (Pl's Brief, pp. 22-23.)

> Section 12.05(C) of the Regulations provides:
>
> 12.05. Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

The Law Judge found that plaintiff did not meet the 12.05C requirements because she did

4

not present a valid verbal, performance, or full-scale IQ score between 60 and 70, together with a physical or additional mental impairment which imposes additional and significant work-related limitation of function. (R. 19.) The Law Judge rejected the only IQ test scores that were presented on the basis that they didn't serve as a fair representation of plaintiff's cognitive abilities, and that even the psychologist conducting the IQ testing admitted it was not valid. (R 19.) The Law Judge also noted that her activities of daily living, including past and current work activities, show she has not had the requisite "deficits in adaptive functioning" required for a finding under 12.05. (R. 19.)

Plaintiff underwent a psychological evaluation by Blanche Williams, PhD, a licensed clinical psychologist, on February 8, 2007. (R. 318-324.) The psychologist noted that plaintiff attended special classes in school and had to repeat the tenth grade, the last year she went to high school before dropping out to care for her child. (R. 319.) Dr. Williams also noted that, although plaintiff did not complete high school, she later received certified nursing assistant ("CNA") certification. (*Id.*.) Dr. Williams believed that plaintiff was "independent with all basic activities of daily living," such as reading, driving, cooking, cleaning, shopping for groceries, managing her own money, staying home alone, and bathing and dressing daily. (*Id.*) She also reported that plaintiff's Full Scale IQ was 67, her Verbal IQ was 65, and her Performance IQ was 76. (R. 321.) The psychologist opined that the wide divergence between plaintiff's verbal and performance IQ scores suggested she suffers with an organically-based learning disability. (*Id.*) Dr. Williams opined that plaintiff was also suffering from significant depression[7], a fact she

---

[7]Dr. Williams opined that plaintiff had a global assessment of functioning ("GAF") of 52. (R. 321-322.) GAF ranks psychological, social, and occupational functioning on a hypothetical

5

believed could cause an underrepresentation of plaintiff's cognitive abilities generally, but would allow for an accurate portrayal of her current cognitive capacity. (*Id.*) Dr. Williams opined that her learning disability, plus her depression, led to a current finding of overall intellectual functioning in the deficient range. (*Id.*) However, Dr. Williams was of the belief that plaintiff's full scale IQ likely would fall in the borderline range when not impacted by the depression she was experiencing on the date of her IQ testing. (*Id.*) Most important, Dr. Williams diagnosed plaintiff as suffering borderline intellectual functioning and a learning disorder, but not mental retardation. (*Id.*)

Although plaintiff offered IQ scores in the range provided for in Listing 12.05C, the undersigned cannot find that the Law Judge erred in rejecting Dr. Williams' IQ test scores, though they were the only scores presented. As the Law Judge pointed out, even Dr. Williams was of the view that plaintiff's depression could cause the scores to underrepresent her cognitive capacity, and as such, these scores were indicative only of her then *present* cognitive capacity. (R. 321.) Dr. Williams' concession that the IQ test results likely portrayed only a snapshot of plaintiff's IQ *at that time* is especially significant because mental retardation is life-long, not acquired disability deficits.

Plaintiff's contention that, she has never lived alone, in her forty-seven years, is not supported by the record and fails to provide evidence of disabling mental retardation. (Pl's Brief,

---

continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed 2000) ( *DSM-IV* ). A GAF score in the range of 51-60 indicates moderate symptoms, such as flat affect and circumstantial speech, occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as few friends and conflicts with peers or co-workers. *Id.* at 34.

6

pp. 21-22.) When unspun, the record reveals that plaintiff can stay home alone and perform all basic activities of living independently. (R. 319.) Therefore, one could find that it is not because of any mental impairment that she is precluded from living independently, but that it is only because of financial circumstances such as the fact that she lost her home. (R. 141, 319.)

Aside from the question related to the validity of her IQ scores, plaintiff has not shown that she suffers from a physical impairment imposing additional and significant work-related limitation of function.[8] Plaintiff's diabetes mellitus, asthma, hypertension, and hypothyroidism are generally found to be well-controlled when she is compliant with recommended treatment. However, the record demonstrates that medical and medication compliance have been a major issue for plaintiff. (R. 240, 249, 280, 290-291, 293-295.) Plaintiff even conceded at times that she was *not taking any of her medications*.[9] (R. 240, 249.) The record also shows plaintiff failed to follow her doctors' recommendations to stop smoking, which likely exacerbated her asthma. (R. 242, 263, 293, 371-372.) Finally, the record shows plaintiff was not following the recommended diabetic diet, even though it would have allowed her to maintain better control over her diabetes mellitus. (R. 240.)

As pointed out by the Law Judge, to the extent plaintiff suffers the effects of these conditions, the burden lies with her to comply with recommended medical treatment, including medication and lifestyle modifications, compliance with medication regimens, weight loss, and

---

[8] Plaintiff has not alleged she suffers from an additional mental impairment which imposes additional and significant work related limitation of function. (Pl's Brief, pp. 22-23.)

[9] "If a symptom can be reasonably controlled by medication or treatment it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

7

ceasing to smoke.

Moreover, the record does not support plaintiff's claim that the side effects of her diabetes mellitus, asthma, hypertension, and hypothyroidism impose significant work-related limitation. For instance, plaintiff testified she walks two miles a day, twice a day. (R. 378.) Also, she is able to drive, and according to the medical expert, she is "independent with all basic activities of daily living." (R. 319.)[10]

In sum, both the Law Judge's finding that plaintiff failed to present valid IQ test results meeting the threshold requirements of § 12.05C of the Listings, and his determination that, even had she done so, plaintiff's other impairments do not impose additional and significant work-related limitation of function are supported by substantial evidence.

Next, plaintiff contends that the Law Judge failed to consider all her limitations in determining her RFC, and that the limitations caused by her physical and mental impairments render her disabled. (Pl's Brief, pp. 23-25.) Somewhat rehearsing the same arguments made in relation to whether she met the requirements of the Listings, plaintiff asserts that the Law Judge's finding that she could perform simple, routine work at all exertional levels failed to include physical limitations caused by her diabetes mellitus, hypothyroidism, asthma, hypertension, and limited mental capacity. (Pl's Brief, p. 24.) The undersigned disagrees.

As discussed above, plaintiff surely suffers a borderline intellectual functioning.

---

[10] Notwithstanding her daily activities, plaintiff, by her own concession, revealed she has made no effort to seek employment since her last job. (R. 319.) While not dispositive in itself, this evidence, when considered with the other evidence in the case, reasonably could bear on the weight given by the Law Judge to her other assertions and allegations that she was disabled by her impairments.

8

However, the Law Judge's RFC finding limits plaintiff to simple, routine work, which adequately accounts for her diminished mental capacity. As noted above, the Law Judge's conclusion that plaintiff failed to show that her other impairments impose additional and significant limitations on her work-related ability to function is supported by substantial evidence.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
U.S. Magistrate Judge

Nov 7, 2008
Date